IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TIARA TURNER, Individually
and on Behalf of All Others Similarly Situated                                          PLAINTIFF

v.                                          Case No. 1:18-cv-1072

CONCENTRIX SERVICES, INC. and
CONCENTRIX CORPORATION                                                                  DEFENDANTS

## ORDER

Before the Court is Plaintiff Tiara Turner's Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notices. ECF No. 16. Defendants have filed a response. ECF No. 26. Plaintiff has filed a reply. ECF No. 32. The Court finds this matter ripe for consideration.

### I. BACKGROUND

Plaintiff filed her complaint on November 30, 2019. ECF No. 1. Plaintiff seeks relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201, *et seq.* ECF No. 1, ¶ 2.

From December 2016 through November 14, 2018, Plaintiff was employed by Defendants as an at-home customer service representative and paid an hourly wage. She worked from home responding to customer service and troubleshooting calls on behalf of Defendants' clients. Plaintiff claims that she regularly worked more than forty hours per week because, at the beginning of each workday, Defendants required her to complete pre-shift tasks prior to clocking in and post-shift tasks after clocking out. She describes some of the pre-shift and post-shift tasks as turning on and off the computer; logging into and out of Defendants' server; opening and logging into Defendants'

timekeeping system; and opening, closing, and logging into and out of numerous programs/applications that were utilized during the shift.

Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") by failing to pay hourly at-home customer service representatives for off-the-clock work performed prior to the beginning of their scheduled shifts, during their unpaid thirty-minute meal breaks, and after the end of the scheduled shift. Seeking recovery of unpaid overtime, Plaintiff brings her FLSA and AMWA claims individually and on behalf of "[a]ll at-home customer service representatives who worked [for Defendants] within the past three (3) years." ECF No. 1, ¶¶ 79, 98.

In the present motion, Plaintiff asks the Court to conditionally certify, pursuant to the FLSA, the following class: all at-home customer service representatives who worked for Defendants within the past three (3) years. ECF NO. 1, ¶ 79. Plaintiff also "requests a period of ninety (90) days to distribute the *Notice* and file *Consent to Join* forms . . . and requests this Court to enter an Order directing Defendant to provide the names, last known mailing addresses, cell phone numbers (or alternatively, email addresses)[,] and dates of employment for potential opt-in Plaintiffs no later than one (1) week after the date of the entry of the Order granting this Motion." ECF No. 16, ¶ 8. Plaintiff also seeks the Court's permission "to provide the *Notice* to potential opt-in Plaintiffs through U.S. Mail and text message, or alternatively U.S. Mail and email" and to "distribute a follow-up reminder *Postcard* . . . via U.S. mail." ECF No. 16, ¶ 9. Finally, Plaintiff seeks Court approval to include a copy of the complaint "as well as Defendants' Answer thereto, if Defendants so request, along with the *Notice*, in instances when the *Notice* is sent by U.S. Mail." ECF No. 16, ¶ 10.

In response, Defendants argue that Plaintiff's motion should be denied for the following reasons: (1) there is no personal jurisdiction for claims against Defendants by non-residents of

Arkansas; (2) there is no evidence of a common nationwide illegal policy applicable to members of the putative collective action; and (3) Plaintiff is not similarly situated to the putative collective action members. Defendants also take issue with various aspects of Plaintiff's proposed notice and plan of dissemination, which the Court will address later in this order.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendants rely on *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017), to argue that the Court lacks specific personal jurisdiction over any out-of-state potential opt-in plaintiffs in the instant lawsuit. In *Bristol-Myers*, a group of plaintiffs brought a mass tort action[1] against Bristol-Myers Squibb in California state court in which they alleged state law claims. *Id.* at 1779. The plaintiffs included 86 people who resided in California, and 592 people who resided in 33 other states. *Id.* The United States Supreme Court held that the California state court lacked personal jurisdiction over the state claims brought by the out-of-state plaintiffs because no connection existed between the forum in California and the claims.[2] *Id.* at 1782-83.

The Supreme Court noted that its decision in *Bristol-Myers* did not usurp "settled principles" of personal jurisdiction. *Id.* at 1783. The Supreme Court further "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. Importantly, the Supreme Court did not clarify whether the logic of *Bristol-Myers* applies to class actions. *See id.* at 1789 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action.").

---

[1] *Bristol-Myers* did not involve a class action as Defendants state in their response. *See* ECF No. 26, p. 7 ("In *Bristol-Myers Squibb*, the Supreme Court held that there can be no personal jurisdiction for the out-of-state corporation if the non-resident **putative class members** were not subject to the illegal action in the forum state . . . .") (emphasis added).
[2] Plaintiffs alleged that they suffered injuries from a drug manufactured by Bristol-Myers. *Bristol-Myers*, 173 S. Ct. at 1281. The out-of-state plaintiffs were not prescribed the drug in California, did not purchase the drug in California, did not ingest the drug in California, and did not suffer injuries in California. *Id.*

3

In the instant case, Defendants assert, similar to *Bristol-Myers*, that no connection exists between any out-of-state potential opt-in plaintiffs and Arkansas. Defendants note that any out-of-state potential opt-in plaintiff resided and worked from his or her home outside of Arkansas and thus did not suffer any alleged injuries in the forum state. The Court notes that *Bristol-Myers* addressed personal jurisdiction in the context of state-law claims. Defendants, however, ask the Court to extend *Bristol-Myers*'s reasoning to a putative FLSA collective action.

No Court of Appeals has addressed the impact of *Bristol-Myers* on FLSA collective action litigation.[3] District courts addressing the impact of *Bristol-Myers* on FLSA collective actions are divided. *Pettenato v. Beacon Health Options, Inc.*, 2019 WL 558733, at *6-8 (S.D. N.Y. Oct. 25, 2019) (collecting cases). One line of cases stems from *Swamy v. Title Source, Inc.*, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), in which the district court determined that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction [over the claims of out-of-state plaintiffs] in FLSA collective actions." *Chavira v. OS Restaurant Services, LLC,* 2019 WL 4769101, at *4 (D. Mass. Sept. 30, 2019) (summarizing *Swamy*, at *2). The *Swamy* court noted that, unlike the state-law tort claims at issue in *Bristol-Myers*, FLSA claims were "federal claims created by Congress specifically to address employment practices nationwide." *Swamy*, at *2. The district court further noted that "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated.'" *Id.*

The other line of cases derives from *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 845 (N.D. Ohio 2018), in which the district court determined that *Bristol-Myers* applies to FLSA

---

[3] Similarly, "[n]o Court of Appeals has engaged the question of whether [*Bristol-Myers*] requires a finding of specific personal jurisdiction with respect to unnamed members of a putative class action suit." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1331 (D. Minn. 2018). District courts are split on the question of whether *Bristol-Myers* prohibits their exercise of personal jurisdiction over out-of-state plaintiffs' claims against out-of-state defendants where those claims are brought in the context of a federal class action pursuant to Federal Rule of Civil Procedure 23. *Pettenato v. Beacon Health Options, Inc.*, 2019 WL 558733, at *6 (S.D. N.Y. Oct. 25, 2019) (collecting cases).

cases in that it divested the court of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs against the defendant. The *Maclin* court determined that it would not limit the holding in *Bristol-Myers* to mass tort claims or state courts. *Id.* at 851.

The parties have not cited to and the Court is not aware of any district courts in the Eighth Circuit that have addressed the impact of *Bristol-Myers* on FLSA collective action litigation. The Court is not bound by the holdings in either *Swamy* or *Maclin*. *See Se. Stud & Components, Inc. v. Am. Eagle Design*, 588 F.3d 963, 967 (8th Cir. 2009). The Court, however, is not persuaded by *Maclin* and agrees with the reasoning in *Swamy*, which is that the Supreme Court in *Bristol-Myers* did not intend to restrict a federal district court's personal jurisdiction in FLSA collective actions authorized by Congress. Unlike the claims in *Bristol-Myers*, the FLSA claims before the Court arise from a federal statute designed to address employment practices nationwide. *See* 29 U.S.C. §§ 202, 207(a). The FLSA collective action provision allows employees to bring claims on behalf of themselves and other employees "similarly situated." 29 U.S.C. § 216(b). Nothing in the plain language of the FLSA limits its application to in-state plaintiffs' claims. *Id.* Thus, the Court finds that *Bristol-Myers* does not divest the Court's personal jurisdiction over Plaintiff Tiara Turner's "similarly situated" collective action under the FLSA, regardless of where the opt-in plaintiffs may have suffered the alleged injury.

**B. Conditional Certification Standard**

Because Plaintiff brings a collective action pursuant to the FLSA, she must use the opt-in mechanism under 29 U.S.C. § 216(b) for joining members of the proposed collective as opposed to the opt-out procedures set forth in Federal Rule of Civil Procedure 23. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 939 (W.D. Ark. 2007). Under the FLSA, an action may be brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought under section 216(b)

5

are "intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Resendiz-Ramirez*, 515 F. Supp. 2d at 940 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

"Ultimately, certification of a collective action will depend on whether the named plaintiffs are similarly situated to the [collective members]." *Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-cv-5177-PKH, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017). Section 216(b) does not provide a standard for courts to utilize when determining whether the plaintiff and the collective members are "similarly situated," and the Eighth Circuit has not yet enunciated a standard. *Id.* However, the prevailing approach within this circuit for collective action certification under section 216(b) is the two-step process set forth in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). *Id.* (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940).

The two-stage process for collective-action certification is divided into: (1) the notice stage; and (2) the opt-in, or merits stage. *Resendiz-Ramirez*, 515 F. Supp. 2d at 941. During the notice stage, the Court decides—usually based only on the pleadings and affidavits that have been submitted—whether notice should be given to potential plaintiffs. *Mooney*, 54 F.3d at 1213. If the Court allows for notification, the Court typically creates a conditional certification of a representative class and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.

At the second stage of the certification process, the Court must decide whether the action should be maintained through trial. *Resendiz-Ramirez*, 515 F. Supp. 2d at 940. Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. *Id.* If the Court decides to decertify the class, the opt-in plaintiffs are dismissed from the suit without prejudice and the case proceeds only for the class representatives in their individual capacities. *Id.*

This case is presently at the first stage of the two-stage certification process. At this initial

stage, the Court does not make findings on legal issues or focus on whether there has been an actual violation of the law. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106-07 (10th Cir. 2001). Further, at this stage, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 n.17 (11th Cir. 1996). Instead, the Court determines whether, under the lenient standard of the notice stage, the named plaintiff, through pleadings and affidavits, has demonstrated that he or she is "similarly situated" to the potential collective members. *See* 29 U.S.C. § 216(b); *Thiessen*, 267 F.3d at 1106-07.

Although the FLSA does not define the term "similarly situated," it typically requires a showing that the plaintiff and potential collective members were victims of a common decision, policy, or plan of the employer that affected all collective members in a similar fashion. *See Thiessen,* 267 F.3d at 1106-08; *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007). Further, the "similarly situated" determination requires only a modest factual showing and does not require the plaintiff and the potential collective members to show that they are identically situated. *See Harris v. Express Courier Int'l, Inc.*, 5:16-CV-05033, 2016 WL 5030371, at *3 (W.D. Ark. Sept. 19, 2016); *Kautsch*, 504 F. Supp. 2d at 689-90. This is not an onerous burden, but Plaintiff nonetheless must show "some identifiable facts or legal nexus . . . bind[ing] the claims so that hearing the cases together promotes judicial efficiency." *Murray*, 2017 WL 514323, at *2 (internal citation omitted). District courts within the Eighth Circuit consider a variety of factors when determining whether plaintiffs and proposed class members are "similarly situated" at the notice stage, including the following:

> (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker[;] and (5) the extent to which the acts constituting the alleged violations are similar.

7

*Harris*, 2016 WL 5030371, at *3.

### C. Conditional Certification in the Present Case

Plaintiff maintains that she has satisfied the lenient conditional certification standard under this two-tiered approach. Defendants, however, take the position that Plaintiff has not met the standard because she cannot establish a common policy that affected all putative collective action members in a similar fashion and because she is not similarly situated to the putative collective action members with respect to their timekeeping practices.

In support of her motion for conditional certification, Plaintiff submitted her declaration (ECF No. 16-7) and a declaration from opt-in plaintiff (ECF No. 30), Fitzgerald Scott, stating that they were employed by Defendants as at-home customer representatives and worked from their homes in Arkansas and Colorado, respectively. Plaintiff states that she worked for Defendants from 2016 to 2018. Scott states that he worked for Defendants from 2016 to 2019. They stated that they regularly worked in excess of forty hours per week and were paid an hourly rate. They further state they were required to complete several pre-shift tasks before clocking in to work and that these tasks took at least ten to fifteen minutes to complete. They also maintain that they were required to perform certain post-shift tasks after clocking out of work, which generally took between one to two minutes per day.

Plaintiff and Scott allege that, pursuant to Defendants' compensation policies, at-home customer service representatives are not paid for the pre-shift and post-shift tasks. They further allege that they are trained and directed to perform these tasks off the clock. They state that Defendants' pay practices are the same for all hourly workers employed as at-home customer service representatives. They further state that they have interacted with other at-home customer representatives employed by Defendants.

### 1. Common Policy

Plaintiff has come forward with substantial allegations that she and the other at-home customer service representatives were subject to a single decision, policy, or plan to deprive them of compensation, namely, that they were required to perform some work, including but not limited to booting up their computers and logging into and out of Defendants' server and various computer software programs, without getting paid for it. Defendants contend that their written policies prohibit the conduct Plaintiff complains of, but the Court notes that there can be a difference between what employees are told verbally and what they are told in writing. Further, Defendant's argument relates to the merits and should not be resolved at this time.

### 2. Similarly Situated

Under the lenient standard applicable at this first state of the collective action certification process, the Court finds that the Plaintiff's evidence is sufficient to demonstrate she and the putative collective action members are similarly situated. Plaintiff claims that she and the other at-home customer service representatives were trained and directed to perform pre-shift tasks before logging into Defendants' timekeeping system and post-shift tasks after logging out of Defendants' timekeeping system. Plaintiff further claims that she and the other at-home customer service representatives were subject to the same pay policies.

Defendants argue that Plaintiff and the putative collective action members were not similarly situated because they worked from different geographic locations and had different managers and different experiences. To support their position, Defendants have submitted affidavits of employees who state that they did not receive the same instruction as Plaintiff. While Defendants have offered evidence calling Plaintiff's claims into question, the Court does not perform fact finding or credibility analysis at this stage of the litigation. *See Jost v. Commonwealth Land Title, Inc.*, No. 4:08-cv-734-CDP, 2009 WL 211943 (E.D. Mo. Jan. 27, 2009). Plaintiff and Scott's declarations

are fairly cursory but do offer some general facts demonstrating that at-home customer service representatives received common training and directives from Defendants and were subject to the same policies and practices.

Defendants argue that Plaintiff has failed to present evidence that similarly situated individuals want to opt into the litigation. District courts within the Eighth Circuit are split as to whether a plaintiff is required to present evidence that similarly situated individuals desire to opt into the litigation. *Compare Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (requiring showing), *with* Kautsch, 504 F. Supp. 2d at 689-90 (not requiring showing). Multiple courts within the Western and Eastern Districts of Arkansas have held that such a showing is not required. *Harrison v. Hog Taxi, LLC*, No. 5:19-cv-5025-TLB, 2019 WL 4280328, at *4 (W.D. Ark. Sept. 10, 2019); *Adams v. United Cerebral Palsy of Cent. Ark., Inc.*, No. 4:16-cv-0930-JLH, 2017 WL 5659822, at *1 (E.D. Ark. Apr. 27, 2017); *Ford v. Townsends of Ark., Inc.*, No. 4:08-cv-0509-BSM, 2010 WL 1433455, at *5 (E.D. Ark. Apr. 9, 2010). The Court agrees and joins with the Arkansas federal district courts that have held that an FLSA plaintiff is not required to prove at the conditional certification stage that other similarly situated individuals wish to opt into the action. To hold otherwise would undercut the FLSA's broad remedial purpose by essentially requiring "plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Harrison*, 2019 WL 4280328, at *4.

The Court finds under the lenient standard of this notice stage that Plaintiff has met her burden of demonstrating that she is similarly situated with putative members. Throughout the pleadings and her declaration, Plaintiff has established that she and all other potential opt-in plaintiffs were at-home customer service representatives who were all subject to the same alleged

decision, policy, or plan of Defendants. Therefore, the Court finds that Plaintiff's proposed class should be conditionally certified for the purpose of giving notice.

### D. Proposed Means of Providing Notification to Potential Class Members

Once the Court has determined that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the Court certifies the collective action, and plaintiffs send court-approved notice to potential class members. *See Kautsch,* 504 F. Supp. 2d at 689-690. "A district court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *See, e.g., Murray*, 2017 WL 514323, at *4.

The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S 165, 170 (1989). The content and method of disseminating notice to potential collective members must be approved by the district court. *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1018 (E.D. Mo. Jan. 15, 2010). Although reasonable amendments to the proposed notice are permissible, the Court will not allow amendments that are "unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).

Plaintiff requests that the Court approve the language of her proposed collective action notice and consent forms. Further, Plaintiff requests Court approval to: (1) send potential opt-in plaintiffs notice and consent forms by U.S. mail and text message (or alternatively, email); and (2) send potential opt-in plaintiffs a follow-up postcard and text message/email after the initial mailing of notice. Plaintiff asks the Court to set a ninety-day period in which to distribute the notice and consent forms and allow for opt-ins. Plaintiff also asks the Court to direct Defendants to provide relevant contact information for potential opt-ins. Defendants raise various objections regarding

notice. The Court will address each of Plaintiff's proposed forms of notice and attendant issues in turn.

### 1. Content of Notice and Consent Forms

Defendants argue that Plaintiff's proposed notice does not apprise class members of their responsibilities in joining the lawsuit. First, Defendants argue that the following sentence contained in the proposed notice is misleading: "It is important to understand that you *may* be entitled to recovery just because you were employed by Concentrix as an At-Home Customer Service Representative at some time since November 30, 2015." ECF No. 16-1, p. 2. Defendants argue that this statement is false because only employees who work overtime without pay could be entitled to damages. Defendants propose that the statement should be modified as follows: It is important to understand that you may be entitled to recovery if you were employed by Concentrix as an At-Home Customer Service Representative since November 30, 2015, and worked overtime without being paid for that time. The Court agrees with Defendants that their proposed modification is a more accurate statement. Thus, the notice should include Defendants' proposed modification as set forth above.

Second, Defendants argue that the following sentence should be added to the section of the proposed notice entitled "Effect of Joining this Suit": If you do not prevail on your claim, Concentrix's court costs and expenses may be assessed against you. Courts, however, have rejected Defendants' argument, noting "it is not clear whether prevailing defendants can be awarded defense costs from plaintiffs seeking recovery under the FLSA, and such a notice may discourage plaintiffs from joining the litigation." *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500 (D. Neb. 2009). Thus, the Court will not require this language to be added to the proposed notice.

Third, Defendants argue that Plaintiff's "Effect of Severance" provision in the proposed notice is confusing, unnecessary, and should be removed. This section reads as follows:

12

> If you are a former employee of Concentrix, you should not be discouraged from participating in this lawsuit merely because you may have signed a severance agreement or similar release upon or following termination of your employment. The impact that this type of agreement has on any claims you may have against Concentrix is an issue to be decided by the Court.

Plaintiff does not address Defendants' argument in her reply. The Court finds that the "Effect of Severance" provision is unnecessary and should be removed.

Fourth, Defendants assert that the notice should only be sent to employees who have worked for Concentrix within three years of the date any opt-in notice is sent. Plaintiff proposes that the notice should be sent to employees who have worked for Concentrix any time after November 30, 2015, the date the complaint was filed. Defendants note that the three-year statute of limitations period for each putative collective member is measured retrospectively from the time the member files consent to join the action, not from the filing of the complaint in this case.[4]

Plaintiff responds that the intricacies of the FLSA limitations period cannot be succinctly described in the notice form and that it is necessary to include a final cutoff date for the collective's time period. Plaintiff states that she chose the date this case was filed in order to include all potential opt-in plaintiffs. Plaintiff suggests that Defendants' request to change the notice's temporal scope is merely an attempt to bury the notice recipients in confusing legalese and thereby chill participation in this case.

The parties each raise valid points, but the Court declines to order modification of Plaintiff's proposed temporal scope. "At this stage in the litigation, judicial economy is served by conditionally certifying a larger, more inclusive class." *Cruthis v. Vision's*, No. 4:12-cv-244- KGB, 2013 WL 4028523, at *5 (E.D. Ark. Aug. 7, 2013). "The Court will address opt-in plaintiffs with

---

[4] FLSA claims are normally time barred if commenced more than two years after the cause of action accrues, but if the violations are shown to be willful, the limitations period is extended to three years. 29 U.S.C. § 255(a). Collective members commence their claim when they file consent to join the suit. 29 U.S.C. § 256(b). In this case, Plaintiff alleges willful violations of the FLSA, so the three-year limitations period applies.

time-barred claims if and when they join the litigation." *Cummings v. Bost, Inc.*, No. 2:14- cv-2090-PKH, 2015 WL 13655466, at *6 (W.D. Ark. Apr. 13, 2015).

The Court has now addressed all objections regarding specific language contained in the proposed notice and consent forms. Accordingly, except for the language addressed above, the Court approves of the remaining general form and language of the proposed collective notice and consent form.

### 2. Dissemination of Notice

Plaintiff asks to send the notice and consent forms to potential collective members via U.S. Mail. Defendants do not object to this request, and the Court approves. Plaintiff also requests that a follow-up postcard be sent thirty days after the notice is first distributed via U.S. Mail. Defendants object to this request, arguing that a follow-up notice is redundant, unnecessary, and could be interpreted as an endorsement of the lawsuit. The Court finds that the request to send a follow-up postcard should be granted subject to a disclaimer that the Court neither encourages or discourages participation in the case and that the title of the follow-up notice be changed from "Second Notice of Right to Join Lawsuit" to "Reminder of Right to Join Lawsuit." The disclaimer will ensure that the putative collective members are informed of the Court's neutrality on the matter and rephrasing the title will improve its accuracy.

In addition to U.S. Mail, Plaintiff requests Court approval to provide notice via text message or alternatively via email. Defendants object to this request, arguing that notice dissemination through text messaging and email is unnecessary and repetitive. In support of their argument, Defendants cite to three cases in the Western District of Arkansas that have denied notice by email and text messages. Defendants refer to these cases as "binding precedent." ECF No. 26, p. 19. However, "[i]t is well established that a district court's prior precedent is not binding on itself or on other courts." *See Se. Stud & Components, Inc.,* 588 F.3d at 967. ("[O]ne district court is not

bound by the holdings of others, even those within the same district.") Moreover, district courts in Arkansas have approved the use of email and text messaging as appropriate means of disseminating notice in FLSA cases. *See Harrison*, 2019 WL 4280328, at *6; *Middleton v. Hempstead Cty., Arkansas*, No. 4:18-cv-4112, 2019 WL 3948106, at *4 (W.D. Ark. Aug. 21, 2019); *McChesney v. Holtger Bros., Inc.*, No. 4:17-cv-00824, 2019 WL 118408, at *6 (E.D. Ark. Jan. 7, 2019).

"The Court finds little basis for imposing a presumption that notice by mail should be the only approved method of providing notice absent a showing by the plaintiffs that personal mailing would be unreliable." *Simmons v. Enter. Holdings, Inc.*, No. 4:10-cv-625, 2011 WL 1304732, at *1 (E.D. Mo. Apr. 6, 2011). The better course is to determine what constitutes fair and proper notice based on the facts of each case. *Id.*

"Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions." *Middleton*, 2019 W 3948106, at *4. The Court finds that, in the instant case, it is reasonable and appropriate to allow Plaintiff to send email notice to the putative collective members. Thus, email notice dissemination shall be allowed, and Plaintiff's proposed email notice form is approved. However, it would be needlessly repetitive to also allow notice dissemination via text message. Thus, Plaintiff's request to also send notice via text message is denied.

### 3. Electronic Consent Form and Follow-Up Email

Plaintiff also seeks the Court's permission to allow potential opt-in plaintiffs to sign consent forms electronically through the Internet service RightSignature, the hyperlink to which would be included on the notice forms. Defendants object to the use of electronically signed opt-in forms, arguing that requiring potential opt-in plaintiffs to return a physical consent form is sufficient.

The FLSA does not contain a physical signature requirement but, rather, requires only that opt-in consent be "in writing." 29 U.S.C. § 216(b). "[W]e live in a time when all manner of . . .

transactions are routinely cemented by electronic submission." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015); *cf.* Ark. Code Ann. § 25-32-107 (providing that an electronic signature may be used to sign a writing and has the same force and effect as a written signature). Indeed, individuals today routinely enter into any number of agreements electronically using various websites, software packages, and mobile phone applications. Thus, this Court and others within Arkansas have, of late, allowed electronic signatures from the RightSignature service in FLSA cases. *See, e.g.*, *Harrison*, 2019 WL 4280328, at *6; *Attaway v. Hydrostatic Oil Tools, Inc*. No. 1:19-cv-1015 (W.D. Ark. Aug. 12, 2019), ECF No. 20; *McChesney*, 2019 WL 118408, at *6. This case is no different, and the Court will allow Plaintiff to utilize the RightSignature service as a means for opt-in plaintiffs to sign the consent documents.

This brings the Court to Plaintiff's request that the Court authorize a follow-up email. Plaintiff explains that this email would be sent by the RightSignature service thirty days after the initial notice dissemination to those who have not completed an electronic consent form. The Court approves of the sending of a follow-up email by the RightSignature service.

### 4. Contact Information

Plaintiff requests that the Court order Defendants to provide her with the following contact information for each putative collective member: (1) name, including any aliases he or she may have gone by or goes by now; (2) the last known mailing address; (3) cell phone number; and (4) any and all email addresses of which Defendants are aware, whether personal or company-sponsored. Because the Court denies Plaintiff's request to send notice to putative collective members via text message, it will deny Plaintiff's request for cell phone numbers. The Court, however, orders Defendant to provide the remaining contact information to Plaintiff in a manipulatable electronic format such as Microsoft Word or Excel.

Plaintiff requests that the Court order Defendants to produce the above-discussed contact

information within seven days after the Court enters the instant order. Defendants request a thirty-day deadline for disclosing the contact information. The Court finds that a fourteen-day deadline for proving the information is reasonable. Thus, Defendants shall provide to Plaintiff the contact information for each putative collective member within fourteen days of the entry of this order.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notices (ECF No. 16) should be and hereby is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) This case is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2) The Court approves the proposed Notice of Right to Join Lawsuit form, once edited to comply with this order.

(3) The Court approves the proposed Consent to Join Collective Action form.

(4) The Court approves sending the notice packet and one follow-up notice, once edited to comply with this order, to potential opt-in plaintiffs via U.S. Mail and email.

(5) The Court approves the utilization of www.rightsignature.com as a means for potential opt-in plaintiffs to sign the consent documents and for the sending of a follow-up email.

(6) Defendants are directed to produce the following contact information of any individual who meets the collective definition: (1) name, including any aliases he or she may have gone by or goes by now; (2) the last known mailing address; (3) all email addresses of which Defendants are aware, whether personal or company-sponsored. The list must be produced in a manipulative electronic format. Defendants shall deliver this information to Plaintiff's counsel within fourteen (14) days of the entry of this order, with the understanding that Plaintiff's counsel is to treat this information as confidential and is not to disclose it to third parties.

(7) Plaintiff shall have ninety (90) days from the date Defendant delivers the requisite contact information in which to distribute the notice and consent documents and to file signed consent forms of opt-in plaintiffs with the Court.

**IT IS SO ORDERED**, this 3rd day of February, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge